**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

RONNIE JONES,
          Petitioner,

                                        PRISONER CASE NO:
          v.                            3:03cv852 (CFD)

COMMISSIONER OF CORRECTION
and WARDEN STRANGE,
          Respondents.

RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Ronnie Jones, currently confined at the State of Connecticut Cybulski Correctional Institution in Enfield, Connecticut, brought this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state convictions of robbery in the first degree and assault in the second degree.  For the reasons set forth below, the amended petition is denied.

I.   Procedural Background

In July 1997, in the Connecticut Superior Court for the Judicial District of Hartford/New Britain, a jury convicted Jones of Robbery in the First Degree in violation of Connecticut General Statutes § 53a-134(a)(2)(3) and Assault of a Victim Sixty or Older in the Second Degree in violation of Connecticut General Statutes §§ 53a-60b.  The court subsequently sentenced Jones to a total effective sentence of thirteen years.   Jones appealed his conviction to the Connecticut Appellate Court claiming that the

verdict was against the weight of the evidence.  On December 26, 2000, the Connecticut Appellate Court affirmed the conviction and sentence in a per curiam decision.  See State v. Jones, 61 Conn. App. 901, 763 A.2d 1092 (2000).  On March 30, 2001, the Connecticut Supreme Court denied the petition for certification to appeal the decision of the Appellate Court.  See State v. Jones, 255 Conn. 954, 772 A.2d 152 (2001).

On September 22, 1998, Jones filed a petition for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Danbury, claiming that counsel had been ineffective during trial.  On February 1, 2002, the Superior Court dismissed the petition.  Jones appealed that decision to the Connecticut Appellate Court.  On February 4, 2003, the court dismissed the appeal.  See Jones v. Commissioner of Correction, 74 Conn. App. 911, 815 A.2d 299 (2003) (per curiam).  On April 17, 2003, that Connecticut Supreme Court denied the petition for certification to appeal the decision of the Connecticut Appellate Court.  See Jones v. Commissioner of Correction, 263 Conn. 912, 821 A.2d 769 (2003).

In March 2002, Jones filed a petition for writ of habeas corpus in this court challenging his conviction on the same ground that he had raised on direct appeal of his conviction, the weight of the evidence.  See Jones v. Commissioner of Correction, 3:02cv467(GLG).  Jones later withdrew that petition because he

sought to complete exhaustion of his ineffective assistance of counsel claim in state court.

On May 13, 2003, Jones filed the present petition challenging his conviction on the weight of the evidence, which he had raised on direct appeal. On August 10, 2004, the court issued an order informing Jones that if he also intended to pursue the ineffective assistance of counsel claim, he must file an amended petition for writ of habeas including that claim[1].  In response, Jones filed an amended petition which included only the ineffective assistance of counsel claim [doc. #21].  The amended petition does not include the ground raised by Jones on direct appeal (weight of the evidence).  As such, the court considers that claim abandoned.[2]

II.  Standard of Review

The federal court "shall entertain an application for a writ

_____

[1]The reason for the Court's order was the indication in his prior federal habeas petition (3:02cv467) that he withdrew that petition to exhaust the ineffective assistance claim.

[2]  Even if the court were to assume that Jones misunderstood the court's order regarding the filing of an amended petition and did not intend to abandon the claim raised on direct appeal of his conviction, the court would not have jurisdiction to consider the claim.  It is well-settled that a "weight of the evidence" claim is not cognizable on federal habeas review.  See, e.g., Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence ...), cert. denied, 476 U.S. 1123 (1986); Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence... "), aff'd, 263 U.S. 255 1923)).

of habeas corpus in behalf of a person in state custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. See Estelle v. McGuire, 502 U.S. 62, 68 (1991); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), significantly amended 28 U.S.C. §§ 2244, 2253, 2254, and 2255. The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any federal claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).

4

A decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] has done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002). A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the particular case." Id. When considering the unreasonable application clause, the focus of the inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable." Id. The Court has emphasized that "an unreasonable application is different from an incorrect one." Id. (citing Williams v. Taylor, 529 U.S. 362, 411 (2000) (holding that a federal court may not issue a writ of habeas corpus under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision. Williams, 519 U.S. at 412.

5

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits).

Collateral review of a conviction is not merely a "rerun of the direct appeal."  Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert. denied, 502 U.S. 895 (1991).  Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  Brecht v. Abrahamson, 507 U.S. 619, 634 (1993) (citations and internal quotation marks omitted).

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of all available state remedies.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509, 510 (1982); Daye v. Attorney General of the State of New York, 696 F.2d 186, 190 (2d Cir. 1982), cert. denied, 464 U.S. 1048 (1982); 28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is not jurisdictional; rather, it is a matter of federal-state comity.  See Wilwording v. Swenson, 404 U.S. 249, 250 (1971) (per curiam).  The exhaustion doctrine is designed not

to frustrate relief in the federal courts, but rather to give the state court an opportunity to correct any errors which may have crept into the state criminal process.  See id.  "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  See O'Sullivan, 526 U.S. at 845.

The Second Circuit requires the district court to conduct a two-part inquiry.  First, the petitioner must have raised before an appropriate state court any claim that he asserts in a federal habeas petition.  Second, he must have "utilized all available mechanisms to secure appellate review of the denial of that claim."  Lloyd v. Walker, 771 F. Supp. 570, 573 (E.D.N.Y. 1991) (citing Wilson v. Harris, 595 F.2d 101, 102 (2d Cir. 1979)).  "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims to the highest court of the pertinent state."  Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995) (internal citations and quotation marks omitted).  See also Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) ("[T]he exhaustion requirement mandates that federal claims be presented to the

highest court of the pertinent state before a federal court may consider the petition."); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) (same).

III. Discussion

The sole ground in the amended petition for writ of habeas corpus is ineffective assistance of trial counsel.  Jones describes his claim as "[r]aising and alleging ineffective assistance of counsel due to motions and documents requested being 'kept' on dockets and under seal."  Am. Pet. at 9.  In support of this claim, Jones also sets forth the ineffective assistance of counsel claim that he raised in his state habeas petition.  He argues that trial counsel's advice regarding his decision as to whether to proceed to trial was incomplete because counsel failed to adequately investigate the facts surrounding the incident giving rise to the criminal charges, including the State's witnesses and their credibility, failed to call witnesses to impeach the State's witnesses and to support his claim of innocence and failed to adequately cross-examine the State's witnesses.

The respondent contends that the allegation in the first part of Jones' claim relating to documents and motions under seal is unexhausted as it was not raised in petitioner's state habeas petition or on direct appeal.  The court agrees.

The remaining aspects of the claim mirror the ineffective assistance of counsel claims raised by Jones in his amended state habeas petition.  As such, those claims have been exhausted. Because Jones has not exhausted all of his grounds for relief, this is a mixed petition, including exhausted and unexhausted claims.

In Zarvela v. Artuz, 254 F.3d 374 (2d Cir.), cert. denied, 234 U.S. 1015 (2001), the Second Circuit established procedures for the handling of "mixed" habeas petitions in light of the AEDPA's one year limitations period.  Zarvela held that a district court has discretion to dismiss the unexhausted claims and stay the exhausted claims, conditioned on prompt filing of state collateral proceedings and prompt return to federal court after the conclusion of the state proceedings).  See Zarvela, 254 F.3d at 380-82.

After Zarvela, the Supreme Court addressed the same issue in 2005 and reached a similar, but not identical, result.  See Rhines v. Weber, 544 U.S. 269 (2005).  The Supreme Court held:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.

Rhines v. Weber, 544 U.S. at 277 (citations omitted).

9

Because Jones has not offered any explanation or cause for his failure to raise the claim regarding counsel's failure to unseal documents in state court and because the one year habeas statute of limitations had already run by the time Jones filed his amended petition in this court raising this unexhausted claim[3], the court declines to stay this case.  Instead, the court

---

[3] Under 28 U.S.C. § 2244(d)(1):

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d).

Here, Jones' conviction became final on June 29, 2001, the date on which the ninety day time period for filing a petition

will exercise its discretion under 28 U.S.C. 2254(b)(2), to

entertain the merits of Jones' unexhausted claim.  <u>See Rhines</u>,

544 U.S. at 277 ("Moreover, even if a petitioner had good cause

for [the] failure [to exhaust state court remedies,] the district

court would abuse its discretion if it were to grant him a stay

when his unexhausted claims are plainly meritless."); <u>Aparicio v.</u>

<u>Artuz</u>, 269 F.3d 78, 91 n.5 (2d Cir. 2001) ("AEDPA permits a

habeas court to reject a claim on the merits notwithstanding the

fact that it is unexhausted").

An ineffective assistance of counsel claim is reviewed under

the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668

(1984).  To prevail, the petitioner must demonstrate, first, that

counsel's conduct "fell below an objective standard of

---

for certiorari with the United States Supreme Court expired. <u>See</u>
<u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir.), <u>cert. denied</u>, 534
U.S. 924 (2001).  The limitations period was tolled during the
period of time the state petition for writ of habeas corpus
remained pending.  Thus, the limitations period began to run on
April 18, 2003, the day after the Connecticut Supreme Court
denied the petition for certification to appeal the decision of
the Connecticut Appellate Court on the state habeas petition.
Jones does not allege that he filed a petition for certiorari to
the United States Supreme Court seeking review of the Connecticut
Supreme Court's denial of his petition for certification.  <u>See</u>
<u>Smaldone</u>, 273 F.3d at 138 (holding that ninety-day period during
which petitioner could have but did not file certiorari petition
to United States Supreme Court from denial of state
post-conviction petition is excluded from tolling under 28 U.S.C.
§ 2244(d)(2)).  Jones filed his amended federal petition on
September 9, 2004, the date he signed the amended petition and
presumably handed it to prisoner officials for mailing to the
court.  Thus, the claim in the amended petition regarding motions
and documents being kept under seal is barred by the one-year
statute of limitations. However, it is addressed in the text.

reasonableness" established by prevailing professional norms and, second, that this incompetence caused prejudice to him.  <u>Id.</u> at 687-88.  Counsel is presumed to be competent.  Thus, "the burden rests on the accused to demonstrate a constitutional violation." <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984).  To satisfy the prejudice prong of the <u>Strickland</u> test, the petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial.  <u>Id.</u>  When the ineffective assistance of counsel claim is premised on counsel's strategies or decisions, the petitioner must demonstrate that he was prejudiced by his counsel's conduct.  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  <u>See Strickland</u>, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In its analysis, the Connecticut Superior Court applied the standard established in <u>Strickland</u>.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  Thus, Jones may obtain federal habeas relief only if the state court

decisions were an unreasonable application of that standard to the facts of this case.

A.   <u>Sealed Documents and Motions Remaining on the Docket</u>

Jones alleges that trial counsel was ineffective because motions were "kept on dockets" and documents were "kept . . . underseal." Jones does not elaborate on this claim. Based on a review of the trial transcripts, the only reference to sealed documents pertained to unredacted medical records of the victim which counsel for Jones sought to have the trial court review in camera to determine whether any of the information that had been redacted related to the facts of the case, was exculpatory, or could be used for impeachment purposes by Jones. (<u>See</u> Trial Transcript of July 9, 1997 at 9-21, Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus, Ex. J.) The transcript reveals that the trial judge granted counsel's motion for in camera review of the unredacted records, unsealed the medical records and reviewed all the information in the medical records.   (<u>See id.</u>) The trial judge determined that the redacted information was confidential and that none of the information was relevant for impeachment purposes, related to the facts of the case or was exculpatory. (<u>See id.</u>) The trial judge then ordered that the redacted set of medical records remain unsealed and available to counsel and that the clerk re-seal the unredacted set of records and keep the records sealed until further order from the court.   (<u>See id.</u>)

It is apparent from the record of the criminal proceedings that Jones' attorney took appropriate action when he received the victim's medical records and noted that some portions of the records were redacted.  He moved for an in camera review of the information that had been redacted and the trial judge granted his motion.  The trial judge was ultimately responsible for the decision as to whether the unredacted medical records could be unsealed.  Based on these facts, the court cannot conclude that trial counsel's performance in this regard falls below an objective standard of reasonableness.

In addition, there is no evidence in the record either in the transcripts or from the docket entries that the court did not dispose of any motions filed by Jones or the State.  (See Resp'ts' Mem. Law Opp'n Pet. Writ Habeas Corpus, Exs. A, J.) Thus, no motions remained pending on the docket.   Jones has failed to demonstrate that trial counsel's conduct regarding the sealed medical records and motions filed with the court was objectively unreasonable.  Because Jones has not met the first prong of the Strickland test, the court concludes this claim of ineffective assistance of counsel lacks merit and is denied.

B.    Investigation of Facts and Cross-Examination of Witnesses

Jones claimed that trial counsel failed to adequately cross-examine the state's witnesses and failed to investigate the facts

14

surrounding the incident giving rise to the charges, the State's witnesses and any witnesses whose testimony might have discredited the State's witnesses and supported Jones' claim of innocence.  This claim was raised by Jones in his state habeas petition.

At Jones' hearing on his state habeas petition, the Connecticut Superior Court made the following findings and legal conclusions with regard to Jones' claims that counsel was ineffective at trial:

> The Court finds that the . . . testimony of Attorney John Watson [Jones's counsel] to be credible and reliable and makes a finding of fact that this attorney conducted a thorough investigation into all the facts that were relevant to the preparation and trial of the petitioner's criminal case.
>
> Attorney Watson sent his investigator, Matt Bolden, to the Hartford Correctional Facility on several occasions to meet with the petitioner.  The petitioner did cooperate with the investigator and did provide necessary information that was required for his defense.
>
> Prior to trial, Mr. Watson also sent his investigator to speak with the victim, Mr. Almedina, and his daughter, Ms. Almedina, who's a witness at the trial.  Mr. Watson also sent someone who spoke Spanish along with his investigator in case there was a language barrier.
>
> In order to prepare for trial, Attorney Watson reviewed the arrest warrant, investigated the criminal background of the victim, read the entire State's file, did legal research, reviewed all the hospital reports regarding the victim's injuries and

15

had a doctor review the blood alcohol level
of the victim at the time of the offense.

Prior to, and at the time of trial,
Attorney Watson prepared and argued motions
in limine, motions for sequestration, motions
to suppress and motion to dismiss, and a
motion for mistrial.

The Court . . . does not find credible
the testimony of the petitioner who claims
that some nine months after the alleged
offense a fellow inmate told the petitioner
that an ambulance was sent to the victim's
address sometime on the date of March 2, 1995
- - the day prior to the night of the offense
- - therefore giving rise to the possibility
that the victim received his injuries from
someone other than the petitioner.

Attorney Watson did investigate his
claim and found no information that led him
to believe that the information provided by
the fellow inmate was credible or reliable or
relevant.

In fact, the Court, upon review of the
trial transcript, finds that when Mr.
Almedina's daughter responded to the scene of
the offense she testified her father's head
was dripping with blood and that while the
police were present, an ambulance was on the
scene to attend to the fresh wounds of the
victim.  Mr. Almedina was then transported to
the hospital.  That is at the trial
transcript.  It's page 310.

The Court also makes a finding of fact
that the testimony at the petitioner's habeas
trial of the Hartford police officer, that on
March 2, 1995 there was a record of a breach
of peace charge at Wethersfield Avenue, near
or about the complex where the victim
resided, is irrelevant to the petitioner's
defense.

There was no testimony produced that the
petitioner's habeas trial as to who was

arrested in this incident, at which unit did
it occur.  There was testimony that this was
a multi-unit complex.  There was no testimony
that there was any injuries of whether or not
an ambulance was dispatched to the scene.

As far as the petitioner's claim that
Attorney Watson's cross-examination of such
critical witnesses such as Mr. Almedina and
his daughter was ineffective, it is
unfounded.  The petitioner testified at the
trial that he was generally dissatisfied with
Mr. Watson's cross-examination of Mr.
Alemdina.

The petitioner makes no specific claim
as to why this cross-examination was
ineffective. Secondly, the petitioner claims
that Mr. Watson did not "go after Ms.
Almedina on cross-examination."

The Court, upon review of the trial
transcript, trial transcript pages 118-260,
makes the following finding of fact: Mr.
Watson conducted a thorough, extensive and
relentless cross-examination of Mr. Almedina.

During his cross-examination of Mr.
Almedina, Mr. Watson was well prepared and he
had conducted a through background
investigation on the victim.  This proved to
be a very effective tool in attacking Mr.
Almedina's credibility insofar as prior
statements made by Mr. Almedina to
investigating police officers and to Mr.
Alemdina's credibility insofar as the fact
that Mr. Almedina has used two dates of
birth. Under one of those dates of birth, Mr.
Watson, through his investigation, discovered
that Mr. Almedina had a criminal record.


In regard to the petitioner's claim that
Mr. Watson did not go after Miss Almedina
during his cross-examination of her during
the petitioner's criminal trial, the Court,
upon review of the trial transcript, pages
343 to 371, finds no basis for this claim.

17

The trial transcript clearly shows that Mr.
Watson was thoroughly prepared and conducted
an extensive effective and relentless cross-
examination of that witness.  And that was
Ms. Almedina.

The Court finds that Mr. Watson
conducted a thorough investigation into all
the background information and the facts
necessary to prepare for the criminal trial
of the petitioner.  Prior to the trial, Mr.
Watson prepared all the necessary pre-trial
motions.  During the petitioner's criminal
trial, counsel continued to file motions and
continued to represent his client well within
the range of competence proscribed under the
Strickland standard.

Transcript of State Court Decision, Resp'ts' Mem. Law Opp'n

Pet. Writ Habeas Corpus, App. M.

At the state habeas hearing, the court credited the

attorney's testimony over Jones' and concluded that the attorney

had provided him with competent representation.  (See id.)  The

Superior Court found that the attorney had thoroughly

investigated all of the facts relevant to the circumstances

giving rise to the charges against Jones, had interviewed the

State's witnesses, had investigated the claim by Jones that an

ambulance had been called to the apartment building where the

victim resided the day before the incident in question and

aggressively cross-examined the victim as well as the victim's

daughter.  The attorney also testified that he called a former

Hartford Police Officer to testify at trial in an attempt to

impeach the victim's credibility.   (See id. at 14-15.)  Thus,

18

the court concluded that Jones had not satisfied the first prong of the Strickland test and dismissed the petition on this ground.

If the state court has considered a claim on the merits and the petitioner has not presented clear and convincing evidence to the contrary, the federal court presumes that the state court's factual determinations are correct.  See 28 U.S.C. § 2254(e)(1); Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001).  Here, the state court decision is supported by specific references to the evidence presented at the hearing and the credibility of the witnesses.  Jones has not rebutted that presumption by presenting clear and convincing evidence to the contrary.  Thus, the court presumes that the state court's factual findings are correct.

The court concludes that the determination of the state court that Jones was afforded effective assistance of trial counsel is not an unreasonable application of the law to the facts of this case.  Accordingly, the claim that trial counsel was ineffective because he failed to adequately cross-examine the state's witnesses and failed to investigate the facts surrounding the incident giving rise to the charges, the State's witnesses and any witnesses whose testimony might have discredited the State's witnesses and supported Jones' claim of innocence is denied.

IV.  Conclusion

The Amended Petition for a Writ of Habeas Corpus [**Doc. # 21**] is **DENIED**.  Because Jones has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this __17th__ day of October, 2006, at Hartford, Connecticut.

_/s/ CFD_____
Christopher F. Droney
United States District Judge

20